PAUL E. KELLEY, Appellant, v. HEARST CORPORATION, Respondent.

Third Department, November 16, 1956.

*Dermot C. Reilly* for appellant.

*George Myers* for respondent.

BERGAN, J. In this action for libel the defamatory words pleaded in the first cause stated in the complaint as referring to plaintiff are: " A former Marine who police said threatened to kill his wife ". The pleading describes these words as being published in a newspaper article " which mentioned plaintiff's possession of a .45 calibre revolver ". The second cause is based on a radio broadcast of this publication; and the third cause is based on a further newspaper publication " mentioning plaintiff's possession of hand grenades, daggers, a sword and a .45 revolver " in which the words were published that " He allegedly threatened to kill his wife Gloria ".

Plaintiff by motion attacks several affirmative defenses in the answer. One is the general allegation as to each publication that it " was in all respects true ". Plaintiff argues on the basis of affidavits that the defense of truth is sham. His ultimate argument seems to be that since plaintiff and his wife are solely in possession of the real facts as to whether or not the described assault occurred, their version ought to be taken as conclusive on

a motion based on sham. Thus it is argued that the defense of truth should be stricken out summarily.

There is no demonstrated support for this argument in the practice; the rule is, rather, that the defense of truth is a triable issue for the jury. The question is not disposable as sham on affidavits merely because one side of the litigation claims greater access to the true facts than the other.

Objection is made also to the legal sufficiency of the allegation that the publication " was in all respects true ". This form of allegation sufficiently raises the issue where the defamatory material is itself specific. Where the complaint pleads that it was libelous to publish that plaintiff threatened to kill his wife, it ought not to be necessary in order to plead truth, to restate literally that he did threaten to kill his wife. To plead that a specific statement of fact is " true " is to state a conclusion of fact sufficiently definite for the purpose of pleading.

Where the libel is general in form as, for example, where the general reputation of a plaintiff is attacked, the answer pleading truth must be factually specific so that plaintiff will know what he must meet on the trial in respect of specific events affecting his reputation (*Wachter* v. *Quenzer,* 29 N. Y. 547). But a pleading of truth related to a particular single occurrence charged as the basis of a libel is adequate to advise plaintiff what issue he must meet on the trial.

Since here truth is pleaded as a complete defense and not as the kind of partial defense which might be available if reliance were to be placed on the literal accuracy of the police having made the statement attributed to them rather than on the true facts about the plaintiff, the plea of truth as a complete defense must be deemed to relate to the underlying fact, and not whether " police said " what the underlying fact was or what " allegedly " the fact was. (*Jesper* v. *Press Pub. Co.,* 76 Hun 64, affd. 149 N. Y. 612.) The defense of truth as pleaded is sufficient in form.

The important arguable question in the case is the sufficiency of the affirmative defense of privilege asserted in the answer in respect of each publication complained of. The plea is separately set up as to each that it was " the publication of a fair and true report of a judicial or other public or official proceeding, and such publication was in the ordinary course of business, without malice and was privileged ". This is almost a literal statement of the words of section 337 of the Civil Practice Act as it read when the pleading was framed.*

---

* By chapter 891 of the Laws of 1956, these words were amended to read " any judicial proceeding, legislative proceeding or other official proceeding ".

To survive plaintiff's attack based on insufficiency of the defense as a matter of law, this pleading ought to be implemented to set up the facts upon which the defense of privilege is based. Enough should be disclosed to enable the court to see on the face of the pleadings whether a finding might be made that the publications complained of were true and fair reports of judicial or other public and official proceedings.

Where the publication charged as libelous discloses itself by its text to be a publication of the kind of official proceeding intended to be privileged by the statute; or where the complaint sets forth factual allegations disclosing such official proceedings, it would be well enough to plead as an affirmative defense that the publication complained of is a fair report of those proceedings thus disclosed; but where there are no proceedings shown by the defamatory material or pleaded in context with it by the plaintiff, defendant ought to plead facts to show the proceedings upon which his affirmative defense of privilege will rest.

When Judge Kellogg was at Special Term he observed that "where a libelous article shows on its face that it is not a report of any public proceedings, but purports to be the publisher's own statements and comments, a defense of privilege is unavailable". (*Vosbury* v. *Utica Daily Press Co.,* 105 Misc. 134, 139.) In the same direction see *Linhart* v. *Bohemian Citizens Benevolent Soc.* (10 N. Y. S. 2d 941, 943).

The only reference to official action of any kind in the texts pleaded in the complaint as libelous are the words "police said" in the first publication described. The narration in private to newspaper reporters by police officers of acts of other persons is not "a public and official proceeding" coming within the range of the statute.

The defense of privilege asserted in *Nunnally* v. *Press Pub. Co.* (110 App. Div. 10) that "the articles complained of in the complaint were full, fair and true accounts of certain public, official and judicial proceedings, to wit, the investigation had by the Coroner's Office * * * into the death of the said Leon Melles" was held not well pleaded. Judge Bartlett noted that "mere investigations of a detective character conducted by persons connected with the coroner's office and by members of a municipal police force do not constitute such judicial or other public and official proceedings" coming within the scope of the statute. (Pp. 12, 13.)

How closely circumscribed the public and official nature of the "proceedings" is viewed is to be seen in the controversy

whether material appearing in papers filed in actions are privileged within the term " judicial " proceedings, which proceedings, as POUND, J., noted in *Campbell* v. *New York Evening Post* (245 N. Y. 320, 325) " have been repeatedly defined as proceedings before a court or judge ". In that case the privilege was held to attach to filed papers in an action, notwithstanding the action had not been brought before a court or judge because the court regarded them as sufficiently part of the " judicial proceeding " to meet the New York test. In the same tenor is the much more recent decision in *Danziger* v. *Hearst Corp.* (304 N. Y. 244, 249). It would be difficult to apply the term " proceeding ", as used in the former or present statute, to merely informal statements or assertions by public officers concerning their investigations.

Discussions which suggest the depth of factual pleading necessary to show the complete defense of statutory privilege, if that is relied on, are *Siegel* v. *Metropolitan Life Ins. Co.* (263 App. Div. 299, 301) where the allegation was made that the material complained of as defamatory was published in legislative hearings or in hearings held in pursuance of legislative authority (*O'Connor* v. *Field,* 266 App. Div. 121, 123; *Saenz* v. *New York Tribune,* 160 Misc. 565, 573).

We turn now to another aspect of defendant's plea of privilege. Plaintiff attacks as insufficient the allegation as part of the plea of privilege, following the statement that each publication was a fair report of an official proceeding that " such publication was in the ordinary course of business without malice."

It is argued by plaintiff that the good faith or the absence of malice of the defendant in publishing the defamatory material " is legally insufficient as a complete defense " and that malice or its absence has no relevancy to the complete defense of privilege which the statute accords a fair report of an official proceeding. To accept this argument at full value is merely to say that the defendant has added an unnecessary burden to its defense.

If defendant establishes that the publication was a fair report of an official proceeding, a complete defense is made out; and it would be unnecessary to go further to establish that defendant also had acted in good faith and without malice.

This is an additional burden which defendant by adopting this form of pleading has imposed on itself; but plaintiff **cannot** complain of the legal sufficiency of the pleading in this respect. The pleading does not set up the absence of malice as a complete defense; rather it relies on a true and fair report of official pro-

ceedings published without malice as a complete defense, which is quite another thing.

The genesis of this form of pleading is not hard to find. In the original Civil Practice Act text of section 337, and its Code predecessor, it was provided that an action could not be maintained against enumerated publishers or editors for the publication " of a fair and true report of any judicial, legislative or other public and official proceedings, without proving actual malice in making the report ". But in 1930 the words " without proving actual malice in making the report " were stricken out by chapter 619 of the laws of that year, which made certain other changes in the section.

Although the statute as it read before 1930 placed the burden of showing malice on the plaintiff, it was very common practice in setting up the defense of privilege to plead affirmatively an absence of malice; and this form of pleading is observable in some cases coming before the court since 1930, although the precise point of the relevancy or propriety of such a plea was not raised or decided. (See, for example, *Briarcliff Lodge Hotel* v. *Citizen-Sentinel Publishers,* 260 N. Y. 106; *Lewis* v. *Chemical Foundation,* 262 N. Y. 489; *Oglesby* v. *Cranwell,* 250 App. Div. 720.)

Absence of malice, of course, is an entirely proper allegation in the partial defense of mitigation. (See, for example, *Varvaro* v. *American Agriculturist,* 222 App. Div. 213, 217, and cases there cited.) It is not a necessary part of the complete defense of privilege here pleaded under section 337 of the Civil Practice Act, and since, if this defense is to be asserted, it must be repleaded, defendant may accept therein the additional burden of showing absence of malice, or not, as it may be advised.

In pleading the defense of privilege as to the first cause of action, the answer refers to " the matters set forth in defendant's newspaper on the 20th day of August, 1952 ", without specific reference to the matter set forth in the complaint. This must be read as referring to the publication complained of in the complaint and not, as plaintiff's brief asserts, as referring to " publications not alleged in the complaint to be false ". The relevancy of this allegation as asserted in the answer is to " the first alleged cause of action set forth in the complaint " and it cannot fairly be read in this context as referring to some other publication.

The affidavit of plaintiff's lawyer that " nowhere " in any public, official and judicial proceeding in which plaintiff " has been involved " for a month before the publications and for

several months thereafter has there been a charge or statement " which could logically or reasonably be described or reported " in the defamatory words complained of, would not be a basis for holding that there is no triable issue in this respect, and for treating the defense as sham if it were otherwise sufficiently pleaded.

The order should be modified by striking out paragraphs 5, 13 and 21 of the answer with leave to the defendant to replead; and as thus modified the order should be affirmed, with $10 costs.

. FOSTER, P. J., COON and GIBSON, JJ., concur; ZELLER, J., not voting.

Order modified by striking out paragraphs 5, 13 and 21 of the answer, with leave to the defendant to replead; and as thus modified the order is affirmed, with $10 costs.