Abraham J. Gellinoff, J.
This is a motion by defendants New York Herald Tribune, Inc., and Milton Lewis, one of its reporters, for summary judgment dismissing the complaint in this libel action.
The action is brought by Congressman Eugene J. Keogh and is based upon five articles written by Lewis, and published in the “ Tribune ” on October 20, 1961, October 21, 1961, May 16, 1962, May 17,1962 and May 22,1962, respectively. The first two articles relate to a proceeding before a Federal Grand Jury and the other three to the trial of a Federal criminal action against the plaintiff’s brother, former Justice J. Vihcewt Keogh, and his codefendants.
The complaint does not set forth each article in its entirety. It quotes only selected excerpts from the articles. Five causes of action are pleaded, each article forming the basis of a separate cause of action.
The present motion is based upon papers which include portions of the Grand Jury minutes in the proceeding which resulted in the indictment of plaintiff’s brother, and on portions of the transcript of the testimony in the criminal trial which followed. The portions of the Grand Jury minutes above referred to were made available to the defendants herein by order of the District Court of the Southern District of New York, and consist, in part, of the Grand Jury testimony which the Federal Government furnished to the defendants in the criminal action.
The second amended answer of the defendants in the instant action pleads two complete affirmative defenses, upon each of which this motion for summary judgment of dismissal is predicated. One of the defenses to each cause of action is that the *890 article complained of therein was a substantially fair and true report of a judicial proceeding and, as such, absolutely privileged. The other defense to each cause is that the article pleaded was published in good faith and without malice about plaintiff, who was a public official at the time, and that, therefore, the article was qualifiedly privileged under the doctrine of New York Times Co. v. Sullivan (376 U. S. 254).
The first article, published October 20, 1961, was headed ‘ ‘ A Judge and Congressman in ‘fix’ Quiz”. It stated that a Federal Grand Jury was investigating a Brooklyn Supreme Court Justice, a Brooklyn Congressman and a former assistant Federal Brooklyn prosecutor and that ‘ ‘ They are suspected of having split an alleged $25,000 payoff to fix a Federal criminal case ” (italics by court). The article also stated that, after the Supreme Court Justice had been approached, “ He got in touch with the Brooklyn Congressman, who allegedly agreed to speak to the Federal judge in the case and to an assistant Federal Brooklyn prosecutor ” and that the latter allegedly agreed to ask for a suspended sentence for the defendants in the Federal criminal case.
The second article, published the following day, identified the Brooklyn Congressman as a friend of President Kennedy and of his father. It stated that ‘ ‘ Allegedly involved in the attempted fix were the Congressman, a Brooklyn Supreme Court Justice and a former assistant Federal Brooklyn Prosecutor ” and added that $25,000 supposedly passed hands under the table ” in the “ would-be fix ”. It further stated that “ a physician who reportedly acted as intermediary to bring in the State Supreme Court Justice, the Congressman and the former Federal prosecutor, was understood to have received threats and is now being guarded by F. B. I. agents.”
Defendants claim that the portions of the Grand Jury minutes incorporated in their motion papers establish that each of these two articles constituted ‘ ‘ a fair and true report ” of a judicial or other official proceeding, within the meaning of section 74 of the Civil Bights Law (formerly Civ. Prac. Act, § 337), and that no civil action may, by virtue of that statute, be maintained against them.
Section 74 of the Civil Bights Law reads as follows:
‘ ‘ Privileges in action for libel.
‘ ‘ A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.
*891 ‘ ‘ This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.”
Plaintiff contends that section 74 does not apply to Grand Jury proceedings because such proceedings are secret under the law and may not legally be made the subject of a published report. The statute, however, contains no such exception. It applies, by its terms, to “ any judicial proceeding, legislative proceeding or other official proceeding” (italics by court). In Bridgwood v. Newspaper P M (276 App. Div. 858) defendant’s article stated what the District Attorney in charge of a Grand Jury investigation had reported as to testimony given before the jury. The defense that the article was privileged as a fair and true report of a judicial proceeding was upheld, the court declaring that “ the defense that the article was a fair and true report of a judicial, public and official proceeding, privileged under section 337 of the Civil Practice Act [now section 74 of the Civil Rights Law], is a defense available to defendants ”.
It is true that in Danziger v. Hearst Corp. (304 N. Y. 244), it was held that section 337 did not protect the publication of sealed documents which were not open to the public. That decision was, however, based on the fact that the section, at the time, contained the word ‘ ‘ public ’ ’. The court, interpreting the statute as limited to “public” proceedings, declared that it did not apply to an article relating to sealed papers. The word “public” was subsequently deleted from section 337 (L. 1956, ch. 891) and is not contained in section 74. The Legislature has thus made clear its intent that the absolute privilege shall apply to fair and true reports of judicial and other official proceedings, regardless of whether they are public or nonpublic. A Grand Jury proceeding is a judicial proceeding. Therefore, whatever punitive sanctions there may be for violation of the secrecy of Grand Jury proceedings (see, in this connection, Code Grim. Pro., §§ 258-259, 913-f, 952-t), they may not be swelled into a denial of the privilege conferred by the Legislature under section 74 to publish a fair and true report of Grand Jury proceedings.
In the case at bar, however, the publications of October 20 and October 21 do not even pretend to be a report of proceedings before a Grand Jury, true or otherwise. The articles do not purport to narrate the testimony of witnesses in the Grand Jury proceeding, nor do they report what transpired before the Grand Jury. They merely tell a story.
*892 Thus the October 20 article states that the Grand Jury is investigating “a Brooklyn Congressman and then adds, without even presenting it as Grand Jury testimony, that “ They [referring to the Brooklyn Supreme Court Justice, the former assistant Federal Brooklyn prosecutor, and the plaintiff] are suspected of having split an alleged $25,000 payoff Further in the article it is stated that the Brooklyn Supreme Court Justice ‘ ‘ got in touch with the Brooklyn Congressman who allegedly agreed to speak to the Federal Judge in the case and to an assistant Federal Brooklyn prosecutor ” (italics by court). Here again, the article recites not what it represents to be testimony before the Grand Jury, but what constitutes its own information as to what plaintiff “ allegedly agreed ” to do.
The article of October 21, too, does not pretend to be a report of proceedings before the Grand Jury. It recites that the “ Brooklyn Congressman under suspicion * * * is friendly with President Kennedy”; that “ allegedly involved in the attempted fix were the Congressman ” and the others; that “ a physician who reportedly acted as intermediary to bring in * * * the Congressman * * * was understood to have received threats ”; and that “ This physician, it is believed, has already testified before the grand jury ” (italics by the court).
Indeed, defendants admit that the October 20 publication was based on information supplied by Samuel Rubenstein, another Herald Tribune reporter, and on similar material that had previously been published in the New York Post, World-Telegram and Journal American, upon which they relied; and that the publication of October 21 was a “ follow up article ”. Moreover, statements made by defendant Lewis and Samuel Rubenstein in their examinations before trial establish conclusively that the publications of October 20 and 21 were not reports of proceedings before the Grand Jury but rather stories based on rumors and gossip. The fact that defendant Lewis admits that in both articles he “took particular pains not to identify the plaintiff to readers ”, indicates Lewis’ own hesitancy in presenting the stories as a “ report ” of a Grand Jury “ proceeding ”. For, were the articles intended as such reports, there would have been no need to conceal plaintiff’s identity.
The fact, therefore, that, according to defendants, the Grand Jury minutes — furnished them at a later date — appear to support their stories, is immaterial and irrelevant. For the defense here is not that they published the truth, but that what they did publish is absolutely privileged as a report of a judicial or other official proceeding. As to the first two causes of action, *893 the court holds that the articles involved are not reports of a judicial or other official proceeding, and that the defense of absolute privilege under section 74 of the Civil Bights Law is therefore not available to defendants.
The second defense as to the articles of October 20 and 21, as has been noted, invokes the doctrine of qualified privilege announced in New York Times Co. v. Sullivan (376 U. S. 254, supra). That case decided that a public official may not recover damages for a defamatory falsehood ‘ ‘ relating to his oficial conduct ”, in the absence of proof that the defendant knew of the falsity or acted in reckless disregard of whether the defamatory statement was true or false. In all the cases cited in the briefs in which the New York Times case (supra) was held applicable, the defamation related to the official conduct of the public official. In the case at bar, the articles do not appear to refer to or involve plaintiff’s performance of his duties as a Congressman. If the doctrine of the New York Times case (supra) is extended to defamation of candidates for public office — a possibility suggested in Pauling v. News Syndicate Co. (335 F. 2d 659, 671) — the alleged defamation here involved, even though it does not relate to plaintiff’s official conduct, is likewise not actionable in the absence of actual malice. However, that question need not be decided here in view of the conclusion reached that, whether an extension of the Times case doctrine applies or not, under the facts of this case an issue of fact exists as to whether the articles of October 20 and 21 were published with “ actual malice ” (New York Times Co. v. Sullivan, supra).
Thus, as has been indicated, Lewis based his first article on information supplied by Bubenstein, another Herald Tribune reporter, and on ‘ ‘ similar ’ ’ material previously published in other newspapers. Admittedly, all of this information was, at the time, courthouse gossip and rumor. Lewis quoted Bubenstein as saying “ This came from an excellent source ”. Bubenstein, however, testified in his examination before trial:
“ Q. Did you tell Mr. Lewis that this information you were giving him came from an excellent source! A. Still gossip.
“ Q. Did you use the phrase ‘ excellent source ’! A. I don’t remember, but if I did, all right, but it is still gossip as far as I am concerned.
“ Q. You would not describe gossip as an excellent source, would you, as a newspaperman! A. Well, no. If I had it from a real official source, I might have done something with the story, but I didn’t.”
*894 Lewis testified in his examination before trial that he had communicated with a Mr. Gfuthman at the Department of Justice in Washington and that Gruthman told him he 1 ‘ doubted that Congressman Keogh was involved in the case
Lewis swears that he bore and bears the plaintiff no personal malice and no ill will; that the articles were written in the regular course of his duties as a reporter; and that before the first publication he endeavored without success to reach the plaintiff. Nevertheless, the court is of the opinion that plaintiff is entitled to have a jury decide whether or not the October 20 and 21 articles were published with ‘actual malice ’ ’, that is, ‘ ‘ with reckless disregard of whether ’ ’ they were ‘ ‘ false or not ” (New York Times Co. v. Sullivan, supra). Accordingly, the motion is denied as to the first and second causes of action.
The remaining three articles purport to report the proceedings at the trial of Judge Keogh.
It is well established that, in order to qualify for an absolute privilege under section 74 of the Civil Bights Law, an article need not be a verbatim report of a judicial or other official proceeding, nor need it be a letter perfect, precisely accurate summary thereof. All that the law requires is that the article be substantially accurate (Briarcliff Lodge Hotel v. Citizen-Sentinel Publishers, 260 N. Y. 106; Schachter v. News Syndicate Co., 270 App. Div. 378; George v. Time, Inc., 259 App. Div. 324, affd. 287 N. Y. 742).
In the Briarcliff Lodge case (supra) the Court of Appeals said (p. 118): “ a fair and true report admits of some liberality ; the exact words of every proceeding need not be given if the substance be substantially stated ’ ’. In George v. Time, Inc. (supra, p. 328), the court, quoting from Fleckenstein v. Friedman (266 N. Y. 19), said that “‘A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced. ’ ”
Plaintiff alleges that he had, in fact, had no knowledge of the conspiracy and that he had not participated therein. He points, moreover, to the testimony at the trial which, he maintains, completely clears him. The defendants are not pleading truth as a defense. Plaintiff’s innocence does not affect defendants’ absolute privilege to publish a fair and true report of a judicial or other official proceeding. Defendants are protected if there was testimony at the trial which substantially supported their report of the proceeding, regardless of whether the testimony was true, or whether plaintiff was in fact innocent.
*895 In the court’s opinion, the articles of May 16, 17 and 22 of 1962 were substantially true and fair reports of the trial proceedings, within the meaning of section 74. The third, fourth and fifth causes of action must be dismissed on the ground of absolute privilege.
The motion is denied as to the first and second causes of action and granted as to the third, fourth and fifth causes of action.