■ HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION OF WORLD CHRISTIANITY, Also Known as UNIFICATION CHURCH, Appellant, v NEW YORK TIMES COMPANY, Respondent.—Order, Supreme Court, New York County, entered on September 22, 1978, affirmed for the reasons stated by Greenfield, J., at Special Term. Respondent shall recover of appellant $75 costs and disbursements of this appeal. Concur—Birns, J. P., Evans, Fein and Sullivan, JJ.

Lynch, J., dissents in part in a memorandum as follows: In its investigation of Korean-American affairs the House Subcommittee on International Relations released four intelligence documents written by unidentified authors containing information related to them by unidentified sources. The earliest document noted that it was unevaluated information. The others contained no such notation but it appears that they may have been written by the same author using the same source as the first document. The item offensive to the plaintiff stated that it was organized in 1961 by one Kim Chong-P'il while he was a director of the Korean Central Intelligence Agency for use as a political tool. The documents inspired three articles published by the defendant and they resulted, respectively, in these three causes of action for libel. Special Term granted summary judgment dismissing them on the affirmative defense of privilege under section 74 of the Civil Rights Law, holding as a matter of law that they were fair and true reports of legislative proceedings. I agree with Special Term's finding that the articles were reports on a legislative proceeding and its observation that "The question here is not so much whether the articles were 'true'—no misquote of the documents is claimed—but rather whether the articles were 'fair' in that they did not make it clear that the KCIA—Unification connection was an uninvestigated claim, and not a CIA proven fact". Special Term recognized that recovery in libel cannot rest on "fine and shaded distinctions" *(Cafferty v Southern Tier Pub. Co.,* 226 NY 87, 93) or on "form exalted above substance" *(George v Time, Inc.,* 259 App Div 324, 329). It relegated all of the plaintiff's causes of action to this category. I agree that the first cause of action should be so characterized. It centers on one sentence in the first newspaper article: "A House investigating subcommittee today released intelligence reports asserting that the Rev. Sun Myung Moon's Unification Church was founded by a director of the Korean Central Intelligence Agency, Kim Chong Pil, as a political tool in 1961". Plaintiff's contention that the use of the word "asserting" is unfair as implying that the intelligence reports gave credence to their sources is such a fine and shaded distinction that it cannot support a libel claim. But the use of a single word or phrase cannot be brushed off as innocuous if a jury, putting itself in the reader's place, could find that the use had perverted the truth. The ultimate test of the fairness of an article is " 'whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.' " *(George v Time, Inc., supra,* p 328, citing *Fleckenstein v Friedman,* 266 NY 19.) Using this standard I find the fairness of the second and third articles to be in question and that these causes of action should be decided by a jury (see *Campbell v New York Evening Post,* 245 NY 320). A paragraph from the second article reads: "Increasingly, it appears that despite a number of inquiries under way in courtrooms and on Capitol Hill, investigators may have to settle for confirming old suspicions about the Koreans rather than breaking new ground. Last week, for example, a subcommittee of the House International

Relations Committee released intelligence reports, which while interesting *simply stated as fact* what many Americans already believe—that the Unification Church of the Rev. Sun Myung Moon was a Korean Government operation" (emphasis supplied). Plaintiff challenges the fairness of "simply stated as fact". A jury might well conclude that the intelligence reports were a collection of raw unverified data, that they contained nothing that would indicate that their authors believed in the truth of the information or the reliability of their sources and that the newspaper article perverted the truth in the mind of the reader when it characterized the reports as simple statements of fact. After the publication of the first two articles members of the plaintiff church picketed the offices of the defendant. This gave rise to the third article, which stated in part: "Neil A. Salonen, president of the church in the United States, denounced the document, written in 1963, as 'clearly labeled as "unevaluated" and "appraisal of contents tentative." ' The document to which Mr. Solonen referred in his statement was so labeled, but at least two subsequent intelligence reports released at the same time by the House Subcommittee on international organizations *confirmed* and elaborated on the links between the church and the K.C.I.A. 'tentatively' noted in the first intelligence reports. The two subsequent documents had no qualifications". (Emphasis supplied.) The plaintiff contends that "confirmed" was unfair. A jury might find that a reader of the article was persuaded, by the use of "confirmed", that the subsequent reports proved the truth of the allegation while a reader of the documents would understand that the allegation was merely repeated. I would modify to reverse the grant of summary judgment as to the second and third causes of action and deny summary judgment on them and otherwise affirm. [99 Misc 2d 125.]